**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| CENTRAL IOWA WATER ASSOCIATION, | |
| Plaintiff, | No. 15-CV-1017-LRR |
| vs. | **ORDER** |
| CITY OF DUBUQUE, | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   *FACTUAL AND PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . **2**

    A.   *Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
    B.   *Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.  *SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . **4**

IV.   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    A.   *The Abstention Doctrines at Issue* . . . . . . . . . . . . . . . . . . . **4**
        1.   **Colorado River** *abstention* . . . . . . . . . . . . . . . . **5**
        2.   **Wilton/Brillhart** *abstention* . . . . . . . . . . . . . . . **8**
        3.   *The* **Scottsdale** *abstention factors* . . . . . . . . . . . **11**
    B.   *The Applicable Abstention Doctrine* . . . . . . . . . . . . . . . . . **12**
    C.   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
        1.   *Parallel proceedings* . . . . . . . . . . . . . . . . . . . . **14**
        2.   *The* **Wilton/Brillhart** *analysis* . . . . . . . . . . . . . **17**
        3.   *The* **Scottsdale** *factors analysis* . . . . . . . . . . . . **20**
            a.   *Usefulness of the declaratory judgment* . . . . . . . . . **20**
            b.   *Whether the declaratory judgment affords relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
            c.   *The strength of the state's interest* . . . . . . . . . . . . **20**
            d.   *Whether the issues are more efficiently resolved in state court* . . . . . . . . . . . . . . . . . . **21**

   *e.*  *Unnecessary entanglement* . . . . . . . . . . . . . . . . . . **22**
   *f.*  *Procedural fencing* . . . . . . . . . . . . . . . . . . . . . . **23**
   *g.*  *Balance of findings* . . . . . . . . . . . . . . . . . . . . . **24**
  *4.* *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**
 *D.* *Dismissal or Stay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

**V.** **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

## I. INTRODUCTION

The matter before the court is Defendant City of Dubuque's ("Dubuque") "Motion to Dismiss (Abstain or Stay) Proceedings" ("Motion") (docket no. 10).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Parties

Plaintiff Central Iowa Water Association ("CIWA") is a non-profit rural water association with its principal place of business in Newton, Iowa. Defendant City of Dubuque is a city organized and existing under the laws of the State of Iowa.

### B. Dispute

In December 2011, CIWA acquired the assets of Vernon Water Company's public water system. The Vernon water system is within two miles of the city limits of Dubuque. CIWA borrowed money from the United States Department of Agriculture, Rural Economic Community Development Service to invest in infrastructure in the rural Dubuque County region. After acquiring the loan, CIWA has provided service to former Vernon customers and has contracted with additional rural residents to provide water service.

On April 16, 2015, Dubuque filed a petition for declaratory judgment in the Iowa District Court for Jasper County ("State Case"), case no. CVCV119397 against CIWA.[1]

---

[1] On July 2, 2015, Dubuque filed a Request for Judicial Notice along with all docket filings in the State Case (docket no. 11). The court takes judicial notice of the State Case.

(continued…)

In the State Case, Dubuque seeks a declaratory judgment to prevent CIWA from providing water service within two miles of Dubuque pursuant to Iowa Code § 357A.2. On May 18, 2015, CIWA filed an answer in the State Case and raised the following affirmative defenses: (1) Dubuque fails to state a claim upon which relief can be granted; (2) Dubuque's claims are preempted by federal law; (3) Dubuque's claims are barred by the Iowa Constitution; (4) Dubuque's claims are barred by the doctrines of laches, estoppel and waiver; and (5) Dubuque's claims are barred by the doctrine of unclean hands. In its answer, CIWA also counterclaimed against Dubuque for: (1) a declaratory judgment stating that CIWA is exempted from Iowa Code § 357A.2; and (2) a ruling that Iowa Code § 357A.2 violates the Iowa Constitution's contracts clause.

On June 9, 2015, CIWA filed a Complaint (docket no. 2) against Dubuque for: (1) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that CIWA is protected by 7 U.S.C. § 1926(b); (2) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that 7 U.S.C. § 1926(b) preempts Iowa Code § 357A.2 or, alternatively, that CIWA's service is exempted from application of Iowa Code § 357A.2; (3) injunctive relief enjoining Dubuque from providing water in the disputed territory; (4) attorney's fees pursuant to 42 U.S.C. § 1988 for violating 7 U.S.C. § 1926(b), applied to Dubuque via 42 U.S.C. § 1983; and (5) attorney's fees pursuant to 42 U.S.C. § 1988 for violating the Contracts Clause of the United States Constitution, applied to Dubuque via 42 U.S.C. § 1983. On July 2, 2015, Dubuque filed the Motion. On July 16, 2015, CIWA filed a Resistance (docket no. 15). Dubuque asks for oral argument, but the court finds that oral argument is not necessary. The Motion is fully submitted and ready for decision.

---

[1](…continued)
*See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (recognizing that court "may take judicial notice of judicial opinions and public records").

### III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over the claims because they arise under the United States Constitution and the United States Code. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV. ANALYSIS

In the Motion, Dubuque asks the court to dismiss, abstain or stay the instant action. Dubuque argues that abstention is appropriate because of the pending State Case. CIWA argues that abstention is not appropriate because the State Case and the instant action are not parallel and the *Colorado River* factors weigh against abstention. The court first discusses the legal principles governing abstention. The court then considers which abstention doctrine is applicable to this case. Finally, the court applies the appropriate abstention framework.

### A. The Abstention Doctrines at Issue

Dubuque argues that the court should abstain from this action under the doctrine proclaimed by the Supreme Court of the United States in *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Motion at 3. It also suggests in passing that, due to the declaratory nature of the relief sought by CIWA, the court has discretion to refuse to entertain a claim under the Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Brief in Support of Motion (docket no. 10-1) at 10. CIWA addresses *Colorado River* in its Resistance, but it does not respond to Dubuque's allegation that the court can refuse to hear its claims under the so-called *Wilton/Brillhart* abstention doctrine. *See* Resistance at 5-11 (addressing *Colorado River* but not *Wilton/Brillhart*). However, because *Colorado River* and *Wilton/Brillhart* have been raised, the court will consider both doctrines in rendering its decision.

4

*1.* **Colorado River** *abstention*

In *Colorado River*, the Supreme Court outlined the principles that govern federal abstention due to pending state court proceedings. 424 U.S. at 817. The Court explained that, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction[.]" *Id.* (citation and quotation marks omitted). This rule "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* Accordingly, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. The Court identified considerations a federal court should weigh when confronted with a request to abstain due to pending state proceedings:

> It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts. . . . In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums.

*Id.* (citations omitted). The Court cautioned that "[n]o one factor is necessarily determinative[.]" *Id.* "[A] carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 818-19. "Only the clearest of justifications will warrant dismissal." *Id.* at 819. In *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, the Court explained two additional factors that should be addressed under *Colorado River* abstention: whether federal or state law controls the dispute and the adequacy of the state forum to protect the federal plaintiff's rights. 460 U.S. 1, 23-27 (1983).

The Eighth Circuit Court of Appeals addressed *Colorado River* abstention in *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527 (8th Cir. 2009). In *Fru-Con*, the Eighth Circuit explained that, "[a]s a threshold matter, . . . there must be pending parallel state and federal court proceedings before *Colorado River* is implicated." *Fru-Con*, 574 F.3d at 535 (citing *In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 477 (8th Cir. 1995), *limited on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 710-11 (1996)). The Eighth Circuit observed that "[p]recedent establishing a comprehensive definition of 'parallel proceedings' for purposes of *Colorado River* abstention is scarce in this circuit." *Id.* "Although the [Eighth Circuit] has decided several cases involving such proceedings, none has discussed the specific elements of parallelism." *Id.* "The prevailing view is that state and federal proceedings are parallel for purposes of *Colorado River* abstention when substantially similar parties are litigating substantially similar issues in *both* state and federal court." *Id.* (emphasis in original). However, the Eighth Circuit concluded that "[t]his circuit requires more precision" than other circuits. *Id.*

> The pendency of a state claim based on the same general facts or subject matter as a federal claim and involving the same parties is not alone sufficient. Rather, a substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court. This analysis focuses on matters as they currently exist, not as they could be modified. Moreover, in keeping with the Supreme Court's charge to abstain in limited instances only, jurisdiction must be exercised if there is any doubt as to the parallel nature of the state and federal proceedings.

*Id.* (citations omitted). "When any doubt exists as to the parallel nature of concurrent state and federal proceedings, the district court cannot utilize *Colorado River* to refuse its jurisdiction." *Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013) (citing *Fru-Con*, 574

F.3d at 535). In addition, "when a party raises an exclusively federal claim, *Colorado River* [abstention] is inappropriate." *Id.* at 1248.

If there are pending parallel state and federal proceedings, a federal court may divest itself of jurisdiction "only when . . . exceptional circumstances warrant abstention." *Fru-Con*, 574 F.3d at 534 (citing *Colorado River*, 424 U.S. at 817-18). The Eighth Circuit delineated "[s]ix non-exhaustive factors [that] have been developed to determine whether . . . exceptional circumstances warrant abstention." *Id.* The court must consider:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Id.* (quoting *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 926 (8th Cir. 2006)).

These factors "are not intended to be exhaustive, nor are they to be mechanically applied." *Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir. 1995). Instead, they should be "pragmatically applied in order to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16). The Eighth Circuit explained the proper application of the factors as follows:

> In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. And: we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to

7

ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. *Moses H. Cone*, 460 U.S. at 25-26 (emphasis in original).

*Id.* (alteration in original).

### 2. Wilton/Brillhart *abstention*

In *Brillhart v. Excess Ins. Co. of Am.*, the Supreme Court held that, although district courts may have jurisdiction to hear declaratory judgment actions under the Federal Declaratory Judgments Act, they were "under no compulsion to exercise that jurisdiction" where similar state court proceedings are underway. 316 U.S. 491, 494 (1942). The Court recognized that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495. The Court warned against "[g]ratuitous interference" with state court proceedings. *Id.* In doing so, the Court refused to enumerate a list of factors that district courts should consider in exercising their discretion, but suggested that courts:

> should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* The Eighth Circuit considers the same factors in deciding whether to abstain under *Wilton/Brillhart*. *See, e.g.*, *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 796 (8th Cir. 2008) (quoting *Brillhart*); *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005) (quoting *Brillhart*); *Evanston Ins. Co. v. Johns*, 530 F.3d 710, 713

(8th Cir. 2008) ("The key consideration for the district court is 'to ascertain whether the issues in controversy between the parties to the federal action . . . can be better settled by the state court' in light of the 'scope and nature of the pending state court proceeding.'" (quoting *Capitol Indem. Corp. v. Haverfield*, 218 F.3d 872, 874 (8th Cir. 2000)).

Later, in *Wilton v. Seven Falls Co.*, the Supreme Court considered whether *Colorado River* and its progeny had supplanted the more discretionary *Brillhart* standard in actions seeking declaratory judgments. 515 U.S. 277 (1995). The Court held that *Brillhart* remained the appropriate standard. *Id.* at 287. The Court noted that "[d]istinct features of the Declaratory Judgment Act [28 U.S.C. § 2201] . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." *Id.* at 286. The permissive language of the Declaratory Judgment Act indicates the "statute's textual commitment to discretion." *Id.*; *see also* 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." (emphasis added)). The Court also recognized its historical commitment to discretion where declaratory judgments were before the court. *Wilton*, 515 U.S. at 287 (noting the "breadth of leeway [the Court had] always understood [the Declaratory Judgment Act] to suggest"). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. In short, when faced with a question arising under the Declaratory Judgments Act, a court has considerable discretion to abstain from hearing the case pending resolution of a state court claim concerning the same parties and subject matter.

As under *Colorado River* abstention, a court applying *Wilton/Brillhart* abstention principles must make an initial finding that there are "parallel proceedings" in both state

and federal court. *See Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013). According to the Eighth Circuit, "[s]uits are parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" *Id.* (quoting *Scottsdale*, 426 F.3d at 997 (internal citation omitted)). The Eighth Circuit explained that:

> [t]hese descriptions are necessarily imprecise given the wide array of issues—and varying articulations of similar issues—that may arise in arguably related litigation. As a functional matter, though, state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and "satisfactorily" resolve the dispute or uncertainty at the heart of the federal declaratory judgment action. [*Brillhart*, 316 U.S. at 495] (describing the inquiry as "whether the questions in controversy . . . can better be settled in the proceeding pending in state court"). [Federal courts] may therefore consider the likelihood that a state court will resolve the issues later presented in federal court, and [] may also consider the likely completeness of any such state-court resolution when assessing whether the earlier-filed actions involve "substantially the same issues." *Scottsdale*, 426 F.3d at 997 (citation and internal quotation marks omitted).

*Id.*[2] If the suits are parallel, the *Wilton/Brillhart* analysis applies and courts are given considerable discretion to abstain from the federal case to avoid inefficient, vexatious and gratuitous interference with pending state court proceedings.

---

[2] The court specifically notes that the Eighth Circuit appears not to apply the stricter *Fru-Con* parallel proceedings standard to abstentions arising out of *Wilton/Brillhart* because it did not do so in *Lexington Ins. Co.* even though it had the opportunity. *Fru-Con* was decided in 2009 and *Lexington Ins. Co.* was decided in 2013. Furthermore, because the court's discretion to abstain under *Wilton/Brillhart* is broader than it is under *Colorado River*, the court feels that application of a less exacting standard regarding parallel proceedings is appropriate. *But see Nat'l Music Museum: Am.'s Shrine to Music v. Johnson*, 72 F. Supp. 3d 980, 985 (D.S.D. 2014) (applying the *Fru-Con* parallel proceedings standard to an abstention motion arising out of *Wilton/Brillhart*).

### *3.* *The* Scottsdale *abstention factors*

The Supreme Court in *Wilton* expressly limited the application of the *Wilton/Brillhart* discretionary standard to those cases in which parallel proceedings are pending in state court. *Wilton*, 515 U.S. at 290; *accord Scottsdale*, 426 F.3d at 996. The Eighth Circuit, in *Scottsdale Ins. Co. v. Detco Indus., Inc.*, declared the standard courts will apply in deciding whether to abstain from a case requesting declaratory judgments when there are no parallel state and federal proceedings for purposes of *Wilton/Brillhart*. 426 F.3d at 998. The Eighth Circuit held that the broad discretion granted under *Wilton/Brillhart* was inappropriate where parallel federal and state proceedings did not exist, but also declined to apply the more restrictive *Colorado River* "exceptional circumstances" analysis. *Id.* Instead, the court must consider:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id.* (quoting *Aetna Cas. & Surety Co. v. Ind-Com Electric Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (per curiam)) (internal quotation marks and brackets omitted) (adopting the Fourth Circuit's factors analysis). Though the Eighth Circuit has not explicitly provided guidance on the application of the *Scottsdale* factors, district courts are guided by the

general proposition that the *Scottsdale* analysis "allows the district court greater discretion than the exceptional circumstances test, but less discretion than it would have under the *Wilton* standard." *Id.* Additionally, the Fourth Circuit, which developed the *Scottsdale* factors, noted that the factors reflect overarching considerations of efficiency, procedural fencing, federalism and comity. *Ind-Com*, 139 F.3d at 423.

## B. The Applicable Abstention Doctrine

The court notes, at the outset, that CIWA invokes the Declaratory Judgment Act in its Complaint. *See* Complaint at 6, 8, 11. It specifically requests a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 on several grounds. *Id.* This alone raises the specter of *Wilton/Brillhart* and *Scottsdale* and suggests that the court apply these abstention frameworks to the instant action. The court recognizes that, if for some reason application of *Wilton/Brillhart* is inappropriate, then the more stringent *Colorado River* principles apply. *See, e.g.*, *Royal Indem. Co.*, 511 F.3d at 793.

Though CIWA has sought injunctive relief and monetary damages in addition to its request for declaratory judgment, this alone is not enough to transmogrify the instant action into anything other than a request for declaratory judgment. The Declaratory Judgment Act itself authorizes a court to grant "[f]urther necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202. Furthermore, the Eighth Circuit has held that, because courts have the authority to grant further necessary or proper relief, "a court may still abstain in a case in which a party seeks damages as well as a declaratory judgment so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action." *Royal Indem. Co.*, 511 F.3d at 793-94 (citing *Horne v. Fireman's Ret. Sys. of St. Louis*, 69 F.3d 233, 236 (8th Cir. 1995)). The Eighth Circuit has recognized that "good faith claims for injunctive relief" may take the action outside the *Wilton/Brillhart* analysis. *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002). However, "a party cannot avoid

application of the *Wilton* and *Brillhart* abstention standard merely by artfully pleading manufactured claims for injunctive relief." *Royal Indem. Co.*, 511 F.3d at 795 n.3. In other words, a plaintiff seeking a declaratory judgment in federal court cannot invoke *Colorado River*'s near-mandatory jurisdiction simply by requesting ancillary injunctive relief or damages. The *Wilton/Brillhart* analysis is still appropriate where the further relief a plaintiff requests is "not independent of the requested declaratory judgment, but [is] closely linked with it." *Id.* at 794; *see also Horne*, 69 F.3d at 236 (holding that, although plaintiff sought a declaratory judgment, injunctive relief and damages, the plaintiff's claim was "most aptly characterized as one for declaratory judgment" where plaintiff claimed employer's policy of mandatory retirement was unlawful and sought an injunction prohibiting defendants from removing him from his job, as well as damages for emotional distress and costs).

In the instant action, CIWA seeks declaratory judgments declaring that it is protected by 7 U.S.C. § 1926(b), that Dubuque acted in violation of such protection and that Iowa Code § 357A.2 is preempted by 7 U.S.C. § 1926(b) or, alternatively, that CIWA's service falls within an exception in the Iowa Code. Complaint at 11. The non-declaratory relief sought includes injunctive relief prohibiting Dubuque from supplying water to the disputed area, injunctive relief prohibiting Dubuque from violating 7 U.S.C. § 1926(b), injunctive relief prohibiting Dubuque "from taking any further action in violation of the declaratory judgment granted herein" as well as costs and attorneys fees pursuant to 42 U.S.C. § 1988 due to its claims under 42 U.S.C. § 1983 for violations of 7 U.S.C. § 1926(b) and the federal Constitution's Contracts Clause. *Id.* at 9-11. This exhaustive reiteration of CIWA's claims only serves to clarify the reality of the non-declaratory relief sought by CIWA—that it is wholly dependent on the declaratory relief sought. The injunctive relief sought by CIWA can only be granted or denied after the court adjudicates the merits of the declaratory relief sought. For example, if the court

were to reject CIWA's contention that it is protected by 7 U.S.C. § 1926(b), an injunction demanding that Dubuque cease violating Section 1926(b) would be meaningless. The fact that CIWA seeks an injunction expressly prohibiting Dubuque from violating the terms of the declaratory judgment sought only serves to further clarify the ancillary nature of the injunctive relief sought. Likewise, the claims for attorney's fees under 42 U.S.C. § 1988 would be meaningless if the court rejects CIWA's request for a declaratory judgment that 7 U.S.C. § 1926(b) applies to it.

CIWA generally seeks declarations of the rights and responsibilities of the parties involved in the lawsuit. Any ancillary relief would clearly arise out of the court's determination of such rights and responsibilities and would therefore constitute "further necessary or proper" relief based on the declaratory judgment. The injunctive relief and monetary awards sought by CIWA are not "independent" of the requested declaratory judgment, but rather are "closely linked with it." *Royal Indem. Co.*, 511 F.3d at 794. Accordingly, the court finds that the essence of this suit is one for declaratory judgment. Therefore, given the nature of CIWA's claims and the relief sought, the court finds that application of the *Wilton/Brillhart* and *Scottsdale* analyses is more appropriate than *Colorado River* principles.

## C. Application

### 1. Parallel proceedings

Dubuque points out that the parties and lawyers in both the State Case and the instant action are exactly the same. Brief in Support of Motion at 8. The court agrees with this assertion and CIWA appears not to contest that fact. Similarity between the parties is necessary for a finding that the proceedings are parallel and the fact that the parties and lawyers are identical here weighs in favor of finding that the State Case and the instant action are parallel proceedings.

Dubuque also asserts that the claims in the two cases are "virtually the same, although the particulars and order of presentation differ marginally." *Id.* Unsurprisingly, CIWA disagrees that the claims are similar and points to its assertion that Dubuque is violating 7 U.S.C. § 1926(b) in the instant action, which it did not allege in the State Case. Resistance at 7. CIWA contends that, in order to invoke the protection of 7 U.S.C. § 1926(b), it must prove: (1) that it is an "association" under the statute; (2) it has a qualifying federal loan; and (3) it has provided or made service available to the disputed area. *Id.*; *see also Pub. Water Supply Dist. No. 3 of Laclede Cty., Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 521 (8th Cir. 2010) (listing the three factor test). The third part of the test depends on a further two-pronged inquiry: one prong governed by federal law and CIWA's physical ability to serve the disputed area (the "pipes-in-the-ground" test) and the other prong governed by state law and the legal right to serve the disputed area. Resistance at 7; *see also Pub. Water Supply Dist.*, 605 F.3d at 521 (describing the two-pronged test). Both parties agree that a determination as to the application of 7 U.S.C. § 1926(b) to the instant action requires application of Iowa Code § 357A.2 to determine who has the legal right to serve the disputed area. Brief in Support of Motion at 10; Resistance at 7-8. To which party Iowa Code § 357A.2 grants the legal right to serve is the primary question in the state law case. The prerequisite nature of this finding, already at issue in the pending State Case, suggests to the court that the statutory issues presented before the courts are "substantially similar" for purposes of finding parallel proceedings. The court further notes that in both the State Case and the instant action, CIWA alleges that it is exempted from Iowa Code § 357A.2 and also that 7 U.S.C. § 1926(b) preempts state law. These issues are not merely similar, they are identical, further suggesting that the State Case and the instant action are parallel proceedings.

Courts are also directed to consider the likelihood that a state court resolution would dispose of the claims at the heart of the federal action, as well as the likely scope of that

disposition. *Lexington*, 721 F.3d at 968. In the instant action, the State Case has the potential to fully dispose of most of the claims presented to the court. For example, a finding in the State Case that CIWA does not have the legal right to serve the area disposes of CIWA's claims under 7 U.S.C. § 1926(b). Alternatively, a finding that the Iowa Code is or is not preempted by federal law would dispose of CIWA's claim in the instant action alleging the same. If the state court disposes of those issues, the only remaining claim before the court would be CIWA's federal Contracts Clause claim. In any case, a determination as to whether Iowa Code § 357A.2 grants Dubuque or CIWA rights to serve the area in question is essential to the court's application of 7 U.S.C. § 1926(b) in the instant action, suggesting that the "questions in controversy . . . can better be settled in the proceeding pending in state court." *Brillhart*, 316 U.S. at 495. The court therefore finds that the issues regarding Iowa Code § 357A.2 that are presented in the State Case are so bound up in the issues regarding 7 U.S.C. § 1926(b) that are presented in the instant action that they are "substantially the same issues" for purposes of *Wilton/Brillhart*.

Furthermore, though it is true that CIWA alleges that Iowa Code § 357A.2, as applied, violates the Iowa Constitution in the State Case and that such application violates the United States Constitution in the instant action, this distinction is no bar to a finding that the proceedings are parallel. The language of the federal Contract Clause and Iowa's Contract Clause is substantially similar.[3] Accordingly, these provisions have been interpreted in essentially the same manner. *See McDonald's Corp. v. Nelson*, 822 F. Supp. 597, 605 (S.D. Iowa 1993), *aff'd sub nom. Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383 (8th Cir. 1994) (citing *Adair Benevolent Soc. v. State, Ins. Div.*, 489 N.W.2d 1, 5 (Iowa 1992)); *Des Moines Joint Stock Land Bank of Des Moines v. Nordholm*, 253 N.W. 701, 709 (Iowa 1934) (noting that, while Iowa courts are free to

_____

[3] "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. 1, § 10, cl. 2. "No . . . law impairing the obligation of contracts[] shall ever be passed." Iowa Const. art. 1, § 21.

construe Iowa's Contracts Clause differently from the federal Contracts Clause, "good policy and a desired consistency between the two Constitutions rather dictate the interpretation of the two clauses be similar"). Though the decision is not binding, *Godfrey v. Branstad* is instructive. 56 F. Supp. 3d 976 (S.D. Iowa 2014). In *Godfrey*, the district court determined that two cases were still parallel for purposes of *Colorado River* abstention when the federal case alleged violations of the federal constitution's Due Process and Equal Protection Clause and the state case alleged violations of Iowa's Due Process and Equal Protection Clause. *Id.* at 983. In coming to this decision, the *Godfrey* court noted that:

> [t]he only distinction between the two proceedings is that the state claims are based upon the Iowa Constitution, and the federal claims are based on the United States Constitution; however, the analysis and recovery under both theories is substantially the same. As such, a final judgment on the merits rendered by the state court likely will be binding on the parties in this [c]ourt under the principles of res judicata.

*Id.* The technical difference between the Iowa constitutional claim and the federal constitutional claim here does not prohibit the court from finding that the State Case and instant action raise issues that are "substantially the same" for purposes of *Wilton/Brillhart* abstention. Accordingly, the court finds that, because the State Case and instant action involve the same parties, and the actions involve substantially the same issues, they are parallel for purposes of *Wilton/Brillhart* abstention. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("Suits need not be identical to be parallel . . . ." (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992)). Therefore, application of the *Wilton/Brillhart* standard is appropriate.

### 2.    The **Wilton/Brillhart** *analysis*

Initially, the court reiterates that the parties in the State Case and instant action are identical. All the necessary parties have been joined in the State Case, and their state claims can be adjudicated in the Iowa state court. Without speculating as to the trial

strategy of the parties, the court supposes that all necessary witnesses and parties are amenable to process in the Iowa state court. These factors are all germane considerations weighing in favor of abstention according to the Supreme Court in *Brillhart*. 316 U.S. at 495.

*Brillhart* also directs courts to consider "the scope of the pending state court proceeding and the nature of defenses open there." *Id*. Here, while it is true that CIWA alleges violations of federal law in the instant action and limits its State Case claims to those arising under Iowa law, as discussed above, a determination of the parties' rights and duties under Iowa Code § 357A.2 is necessarily bound up in a determination of CIWA's rights under 7 U.S.C. § 1926(b). Additionally, in both the State Case and the instant action, CIWA alleges that the state statute is preempted by federal law, as well as that Iowa Code § 357A.2 does not apply to it. Though the court does not doubt its ability to interpret and apply Iowa law, the possibility of inconsistent outcomes between the parallel proceedings cautions the court against acting too hastily in the instant action. Furthermore, as discussed above, the state case has the potential to fully dispose of several claims pending before the court in the instant action. This fact further counsels against hearing this case and exacerbating the possibility of inconsistent results. Rather, "considerations of practicality and wise judicial administration" suggest that abstention is appropriate under the considerable discretion that *Wilton/Brillhart* affords district courts. *Wilton*, 515 U.S. at 288.

The court recognizes that the claims before it arise out of federal law and that such a consideration weighs against abstention. For example, in *Verizon Commc'ns, Inc. v. Inverizon Int'l, Inc.*, the Eighth Circuit reversed the district court's decision to abstain from federal proceedings on the basis that *Wilton/Brillhart* abstention was inappropriate because the district court failed to take into account the fact that the basis for the court's jurisdiction was federal question, rather than diversity, jurisdiction. 295 F.3d 870, 873 (8th Cir. 2002). However, *Verizon* is readily distinguishable because the federal question

before the court in *Verizon* concerned trademark law under the Lanham Act. *Id.* at 871-72. While the Eighth Circuit held that the primacy of federal law to the federal proceedings overshadowed any concurrent jurisdiction that the state court had to resolve the issues, it also recognized the special nature of the federal claims brought before it. *Id.* at 873. It specifically noted that "federal courts now decide all but a few trademark disputes. State trademark law and state courts are less influential than ever. Today the Lanham Act is the paramount source of trademark law in the United States, as interpreted almost exclusively by the federal courts." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 782 n.16 (1992) (internal citations and quotation marks omitted)). Because the instant action does not involve issues arising under federal laws over which federal courts have, in practicality, nearly exclusive jurisdiction, the fact that the instant action implicates federal law is entitled to some, but not excessive, weight in the analysis.

Considering the importance of the state law issue to the federal claims presented before the court and being mindful that the state court proceedings were initiated first, the court finds that the dangers of inconsistent outcomes and the potential for nearly universal disposition of the claims before it in the instant action warrant abstention under *Wilton/Brillhart* principles. For the court to hear similar, and in some cases identical, issues as the Iowa court in the State Case would be uneconomical. The court's intrusion into questions of state law that have already been presented to a state court may very well constitute "gratuitous interference" with those proceedings. *Brillhart*, 316 U.S. at 495. Though the issues CIWA presents in the instant action are framed as federal issues and thus weigh against abstention, the court finds that the balance of considerations weighs against hearing the claims prior to the Iowa court's disposition of the State Case. Accordingly, the court exercises its discretion under *Wilton/Brillhart* and abstains from the instant action.

### 3. The Scottsdale factors analysis

Even if the court had found that the proceedings below were not parallel, it would still feel compelled to abstain from hearing the instant action under the more stringent *Scottsdale* factors.

#### a. Usefulness of the declaratory judgment

The court does not doubt that a declaratory judgment would "clarify and settle" the legal relations at issue. Such a declaration is truly at the heart of both the State Case and the instant action. As such, this factor weighs substantially against abstention.

#### b. Whether the declaratory judgment affords relief

The court recognizes that a declaratory judgment would indeed terminate and afford relief from the "uncertainty, insecurity and controversy" that gave rise to the instant action. A declaration as to the rights and duties of the parties under the various statutory schemes as requested by CIWA would settle the claims brought before the court. Accordingly, this factor weighs against abstention.

#### c. The strength of the state's interest

Courts applying the *Scottsdale* analysis have interpreted this factor in a variety of ways. For example, in *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co., Inc.*, the Eighth Circuit recognized that the Minnesota state courts in that case had an interest in interpreting the scope of an insurance policy's coverage under state law. 462 F.3d 1002, 1007 (8th Cir. 2006). However, the Eighth Circuit noted that, although the Minnesota Supreme Court had not ruled on the issue, the Minnesota Court of Appeals had rendered decisions on point and such precedent was clear. *Id.* at 1004-07. For that reason, the Eighth Circuit ultimately found that the state's interest in interpreting the policy was not strong enough to warrant counting this factor in favor of abstention. *Id.* at 1007. In *Scottsdale* itself, the Eighth Circuit pointed out that, because there was no contemporaneous state court proceeding in that case deciding the issues in dispute, a decision by the federal court "would not conflict with any state court determination in the

underlying actions." 426 F.3d at 999 (internal quotation marks omitted). As such, this factor in *Scottsdale* weighed against abstention. *Id.*; *see also Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004) (noting that this factor recognizes a state's "strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law").

Here, unlike in *Advance Terrazzo*, the Iowa state courts have not crafted a clear line of precedent interpreting Iowa Code § 357A.2. As the parties point out, Iowa Code § 357A.2 was amended in 2014 and the amendment purports to bring CIWA within the confines of the statute. The court is unaware of any proceeding, whether in state or federal court, that has interpreted and applied this amendment. Unlike in *Advance Terrazzo*, the court cannot rely on clear state court precedent, and, thus, the state court's interest in interpreting its own law is heightened. Furthermore, unlike in *Scottsdale*, an Iowa court has been called upon to resolve several of the issues presented in the instant action via the first-filed State Case, further strengthening the state's interest in resolving questions of state law. As noted above, the court's concern, and an apparent consideration in *Scottsdale*, is the possibility of conflicting and inconsistent outcomes between the state and federal proceedings. For these reasons, the court finds that the third factor weighs substantially in favor of abstention.

### d.     Whether the issues are more efficiently resolved in state court

This factor focuses on considerations of judicial economy and efficient resolution of the underlying dispute. *See Lexington Ins. Co.*, 721 F.3d at 971 (holding that the presence of multiple unrelated issues in the state court proceeding made efficient resolution of the controversy uncertain); *Scottsdale*, 426 F.3d at 999 ("[I]n the absence of a pending parallel state court proceeding, judicial economy would be best served by deciding this action initially in the federal district court."). In the instant action, it is true that in a purely technical sense, the federal claims asserted by CIWA have not been presented before the Iowa court in the State Case. However, the reality of the federal claims

presented before the court, as the parties recognize and the court has previously discussed, is that a determination of the legal right to serve the disputed area under state law is entwined with the federal claim under 7 U.S.C. § 1926(b). Additionally, as the court has already noted, CIWA alleges that 7 U.S.C. § 1926(b) preempts Iowa Code § 357A.2 in both the State Case and the instant action. The court fails to see how judicial economy and efficient resolution of the issues at hand would be served by simultaneous, largely duplicative litigation in state and federal court—even if resolution of the state court issues will not fully resolve all issues before the court, such as CIWA's federal Contracts Clause claim.

CIWA urges the court to retain jurisdiction because the federal claims, which encompass the state claims, present the more "inclusive" and "complete" action. Resistance at 9 (citing *Federated*, 48 F.3d at 298). Other courts construing the fourth *Scottsdale* factor have considered similar reasoning. *See, e.g.*, *Fed. Ins. Co. v. Sammons Fin. Grp.*, 595 F. Supp. 2d 962, 978 (S.D. Iowa 2009) (noting that it is most efficient to address questions posed solely to the federal court in that forum rather than abstain). The court recognizes that resolution of the question of the legal right to serve under Iowa Code § 357A.2 resolves but one part of CIWA's more inclusive 7 U.S.C. § 1926(b) claim. Thus, CIWA's argument is persuasive, though heavily tempered by the court's reluctance to entertain duplicative litigation and the inefficiencies that necessarily entails. Accordingly, the court finds that this factor weighs against abstention, though only slightly.

### e.    *Unnecessary entanglement*

This factor asks whether the presence of "overlapping issues of fact or law" would create "unnecessary entanglement" between the federal and state systems. *Scottsdale*, 426 F.3d at 998. This factor rests on considerations of comity and respect for federalism. *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). "A system of judicial federalism has enough inherent friction without the added aggravation of unnecessary federal

declarations on questions [that a state court will address in a pending state action]." *Id.* at 240. As the court has noted numerous times, in order to dispose of CIWA's claim under 7 U.S.C. § 1926(b), the court must ascertain whether CIWA has the legal rights to serve the disputed area under Iowa Code § 357A.2. This latter question is the one posed before the Iowa courts in the State Case. The court in this instance cannot avoid becoming entangled with the state court's interpretation of its own law. The claims before the Iowa court in the State Case and those before the court in the instant action are similar and arise out of the same activity such that issues of fact will largely be common to both. The court finds this to be a paradigmatic instance of unnecessary entanglement and, accordingly, finds this factor to weigh substantially in favor of abstention.

### f. Procedural fencing

This factor "contemplates the very real concern that[,] although a parallel state proceeding may not exist at the time of the federal declaratory judgment action, a state action between the same parties may follow and be precluded by res judicata." *Scottsdale*, 426 F.3d at 1000. Additionally, courts are directed to consider whether the parties are attempting "to achieve a federal hearing in a case otherwise not removable." *Id.* at 998 (brackets and internal quotation marks omitted). Dubuque contends that just such procedural gamesmanship is afoot here. Brief in Support of Motion at 11. Specifically, Dubuque argues that, as it pleaded its state law claims in the State Case, CIWA could not have removed the case to federal court and that CIWA is attempting a "backdoor removal" by filing a federal complaint regurgitating the counterclaims asserted in state court. *Id.* (citing *Chapman v. Lab One*, 390 F.3d 620, 625 (8th Cir. 2004)).

As an initial matter, Dubuque appears to be correct regarding CIWA's ability to remove the State Case. The Eighth Circuit generally considers a party's assertion that state law is preempted by federal law to be a defense to the state law claim, rather than a basis for removal to federal court. *Chapman*, 390 F.3d at 625. The only manner by which a claim of preemption can provide the basis for removal is where the state law has been

"completely" preempted by federal law. *Id.* An area of law is "completely preempted" when "Congress intended for the federal courts to fashion a body of 'federal common law' that would govern disputes arising under the federal statutes." *Id.* at 629 (noting that the doctrine of "complete preemption" has been primarily applied to cases arising under § 301 of the Labor Management Relations Act of 1947 and the Employee Retirement Security Act of 1974). The court doubts that Congress intended federal courts to craft a body of federal common law surrounding 7 U.S.C. § 1926(b) and preempt state law when one portion of the inquiry under the federal law rests on an application of state law. In any case, the court agrees with Dubuque to the extent that simply reimagining CIWA's state law counterclaims as federal claims is suspect and appears to be a mere attempt to gain entry into federal court when it could not remove the State Case. As noted above, an attempt to coopt removal procedure is a relevant consideration under this factor. *Scottsdale*, 426 F.3d at 1000. However, the court also believes that CIWA's desire to adjudicate federal claims before a federal court is likely genuine and that its belief that it is protected by 7 U.S.C. § 1926(b) is similarly genuine. It does not appear that CIWA filed the instant action vexatiously or merely as a step in the race toward res judicata, and Dubuque does not suggest this is the case. Nonetheless, the court cannot ignore CIWA's apparent attempt at "backdoor removal" as Dubuque characterizes it. Accordingly, the court finds that the sixth factor weighs slightly in favor of abstention.

### g.    *Balance of findings*

The court finds that factor one weighs substantially against abstention, factor two weighs against abstention, factor four weighs slightly against abstention, factors three and five weigh substantially in favor of abstention and factor six weighs slightly in favor of abstention. On the basis of the balance of factors alone the court would choose to abstain from the instant action. However, guided by general principles of efficiency, procedural fencing, federalism and comity, the court is further convinced that the most efficient

outcome, and the one most aligned with principles of federalism and comity, is to abstain from the instant action.

### 4. Summary

The court finds that the State Case and the instant action are parallel for purposes of *Wilton/Brillhart* abstention. The court also finds that, pursuant to its discretion under *Wilton/Brillhart*, the circumstances in these proceedings warrant abstention. The parties in the two actions are identical, and the issues raised are substantially similar. Disposition of CIWA's federal claims rests on resolution of a state law question that has already been presented to the Iowa courts. The court also finds that, even if the State Case and the instant action are not parallel for purposes of *Wilton/Brillhart*, abstention is still appropriate under *Scottsdale*. Application of the *Scottsdale* factors warrants abstention, in large part because of Iowa's strong interest in resolving the State Case and because the instant action would lead to unnecessary entanglement between the federal and state courts.

## D. Dismissal or Stay

In its Resistance, CIWA requests that the court stay, rather than dismiss, the proceedings if it finds abstention to be appropriate. Resistance at 12 n.2. Dubuque does not specify whether it prefers the court stay or dismiss the action. Brief in Support of Motion at 11.

The Supreme Court in *Wilton* recognized that, where abstention is appropriate, "a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." 515 U.S. at 288 n.2 (citing P. Bator, et al., Hart and Wechsler's The Federal Courts and the Federal System 1451 n.9 (3d ed. 1988)); *see also Haverfield*, 218 F.3d at 875 n.2 ("We recognize that a stay rather than dismissal is the preferred mode of abstention where the possibility of a return to the federal court remains." (citing *Int'l Ass'n of Entrepreneurs v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995)). Seeing no reason to justify dismissal and acknowledging the possibility of a return to the federal forum, the

court finds that a stay rather than dismissal of the instant action is appropriate pending final resolution of the State Case.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED**:

(1)     The Motion is **GRANTED**;

(2)     All proceedings in this case are **STAYED** pending final resolution of the State Case, that is, *City of Dubuque, Iowa v. Iowa Regional Utilities Association d/b/a Central Iowa Water Association*, No. CVCV119397 (Jasper County Dist. Ct. 2015);

(3)     The Clerk of Court is **DIRECTED** to close this case for administrative purposes;

(4)     The parties are **DIRECTED** to notify the court immediately upon the conclusion of the State Case; and

(5)     Upon receiving an appropriate motion to reopen the case, the court will commence further proceedings.

**IT IS SO ORDERED.**

**DATED** this 15th day of September, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA